**Brenda K. HILL, Plaintiff,**

v.

**John CALLAHAN, Ph.D.,[1] Commissioner of Social Security, Defendant.**

**No. 3–96–CV–90162.**

United States District Court,
S.D. Iowa,
Central Division.

Sept. 25, 1997.

---

1. President Clinton appointed John J. Callahan to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan is hereby substituted for Shirley S. Chater as defendant in this action.

Michael DePree, Davenport, IA, for Plaintiff.

Inga Bumbary–Langston, Asst. U.S. Atty., Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER OF REVERSAL

PRATT, District Judge.

Plaintiff, Brenda K. Hill, seeks judicial review of the Social Security Commissioner's decision denying her insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.,* 1381 *et seq.* This court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). This case is reversed and the Commissioner is ordered to award benefits.

## BACKGROUND

Plaint if filed an application for disability benefits on October 6, 1992, claiming an onset of disability date of June 6, 1992. Her application was denied initially and upon reconsideration. After a hearing, Administrative Law Judge John P. Johnson (ALJ) issued a decision on June 24, 1994, denying benefits. On October 20, 1994, the Appeals Council remanded the case for further consideration. After a second hearing, the ALJ issued a new decision on August 19, 1995, which again denied benefits. The ALJ's second decision was affirmed by the Appeals Council on October 17, 1996. A Complaint was filed in this Court on November 8, 1996.

## STANDARD OF REVIEW

We must affirm the Commissioner's decision denying benefits if substantial evidence on the record as a whole exists. See *Lawrence v. Chater,* 107 F.3d 674, 676 (8th Cir.1997). "Substantial evidence is

less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Id. (citations omitted). In determining whether substantial evidence exists, "we must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but we may not reverse merely because substantial evidence exists for the opposite decision." *Gwathney v. Chater,* 104 F.3d 1043 1045 (8th Cir.1997) (citation omitted).

*Davis v. Callahan,* 125 F.3d 670, 672 (8th Cir.1997). In making this inquiry, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975).

## ALJ'S FINDINGS

Plaintiff met the earnings requirement of the Act on her alleged onset of disability date and continued to meet them through the end of March, 1994. The ALJ, following the sequential evaluation found at 20 C.F.R. § 404.1520, found that Plaintiff has not engaged in substantial gainful activity since June 6, 1992. At step two, the ALJ found that Plaintiff has severe impairments: a panic disorder with a history of agoraphobia and claustrophobia, a history of a right thumb strain, and deformity of the left shoulder. At step three, the ALJ found that none of Plaintiff's impairments are severe enough to meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4. At step four, the ALJ found that Plaintiff is unable to do any of her past relevant work. At step five, the ALJ found that there is unskilled work which exists in significant numbers that Plaintiff is capable of performing.

## BURDEN OF PROOF

■ Initially, it was Plaintiff's burden to prove that she is unable to perform her past relevant work. Once that burden was met, the burden of proof shifted to the Commissioner:

> to prove with substantial evidence that the applicant has the RFC [residual functional capacity] to do other kinds of work, and that his RFC, age, and so forth fit him to do some job that exists in the national economy. The grid, if applicable, estab-lishes that jobs exist for certain kinds of people. The Secretary must still show that the claimant is a member of one of the groups described in the grid. This burden includes the duty to establish by medical evidence that the claimant has the requisite RFC.

*McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc).

## DISCUSSION

■ In the case at bar, the ALJ found:

> The claimant has the residual functional capacity to perform work except for no work in excessive heat and humidity, and to avoid excessive windy conditions. She should not work at unprotected heights. The claimant is not able to do very complex, technical work, but is able to do more than simple, routine, repetitive work not requiring very close attention to detail. The claimant can have no more than occasional contact with the public, co-workers, and/or supervisors, but she needs occasional supervision. She can work at no more than a regular pace with a mild to moderated level of stress.

Tr. P. 39. The Court can find no medical evidence to support this finding, and a great deal of medical evidence that detracts therefrom. The treating psychiatrist, Steven C. Chang, M.D., on a number of occasions, wrote statements of Plaintiff's limitations that are different from those found in the ALJ's decision. On November 12, 1992, Dr. Chang wrote a detailed report of Plaintiff's history to Disability Determination Services. Tr. PP. 266–268. Dr. Chang concluded his report:

> Considering Brenda's functional abilities, she seems able to remember locations and work-like procedures, as well as understand remember, and carry out very short, simple instructions. On the other hand, she might experience moderate difficulty understanding, remembering and carrying out detailed instructions. Moderate limitations might also apply to her ability to maintain attention and concentration, as well as completing a normal work day and work week. She seems able to sustain an ordinary routine without special supervi-

sion, as well as make simple work-related decisions within a schedule. She seems moderately limited in her ability to interact appropriately with the public, as well as in getting along with her coworkers or peers. She would probably encounter marked difficulty accepting instructions and responding to criticism, but does seem able to ask simple questions, request assistance, and maintain socioappropriate behavior. Also, she seems able to be aware of normal hazards and travel to unfamiliar places, and use public transportation. She might encounter moderated difficulty responding appropriately to changes in the work setting or in setting realistic goals for herself. She does appear able to manage her money.

Tr. P. 268. On December 27, 1992, Timothy L. Weissinger, M.D., a psychiatrist with Disability Determination Services, opined that Plaintiff would be capable of substantial gainful activity within 12 months of the onset of disability. Tr. P. 271. On February 9, 1993, Dr. Chang wrote a second letter to Disability Determination Services in which the limitations were, although not identical, essentially the same as in his letter of November 12. Tr. P. 275. On February 23, 1993, Carole Kazmierski, Ph.D., a psychologist at Disability Determination Services completed a Mental Residual Functional Capacity Assessment form in which she stated that "controlling weight" should be given to the treating physician. Dr. Kazmierski found moderate limitations in 12 out of the 20 activities to be evaluated, including the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. PP. 276–277. On May 4, 1994, Dr. Chang completed a form very similar to the Mental Residual Functional Capacity Assessment form. Tr. PP. 316–320. On this form, Dr. Chang said that Plaintiff's ability to complete a normal work day and work week was markedly limited. Tr. P. 318.

In the order of remand, dated October 20, 1994, the Appeals Council instructed the ALJ to, among other things, obtain additional testimony from a vocational expert. "In so doing," wrote the Administrative Appeals Judges, "the Administrative Law Judge must ensure that the hypothetical questions reflect the specific capacity/limitations established by the record as a whole." Tr. P. 363.

On January, 13, 1995, Dr. Chang wrote a third letter to Disability Determination Services in which he once again stated, among other things, that Plaintiff is moderately to markedly limited in her ability to complete a normal work day and week. Tr. P. 375.

■ In the Decision, the ALJ wrote: "Although this Administrative Law Judge has considered Dr. Chang's opinion, he has given far greater weight to the claimant's testimony of her daily activities and the actual treatment records provided by Dr. Chang." This is error. In the first place, making a credibility finding is not equivalent to proving with medical evidence that a claimant has a residual functional capacity. *Soth v. Shalala,* 827 F.Supp. 1415, 1417 (S.D.Iowa 1993). Furthermore: "An ALJ may not draw upon his own inferences from medical reports." *Lund v. Weinberger,* 520 F.2d 782, 785 (8th Cir.1975) (citing *Landess v. Weinberger,* 490 F.2d 1187, 1189 (8th Cir.1974); and *Willem v. Richardson,* 490 F.2d 1247, 1248–49 n. 3 (8th Cir.1974)).

Dr. Chang was asked a number of times, both by the Commissioner, through the Disability Determination Services, and by Plaintiff's counsel, to state his opinion regarding Plaintiff's residual functional capacity The ALJ rejected this opinion without so much as a single consultative examination to provide an alternative view of Plaintiff's limitations. Thus, the treating physician's opinion, is uncontradicted in the record. The only doctor who even remotely disagreed with Dr. Chang was Dr. Weissinger, and he was of the opinion that Dr. Chang's treatment would be successful within 12 months of onset. It must be remembered that Dr. Weissinger did not examine Plaintiff, he only reviewed the first report from Dr. Chang. Later evidence shows that Dr. Weissinger's expectation of improvement was not realized. The other doctor at Disability Determination Services, who reviewed Plaintiff's medical records, agreed with Dr. Chang. So, what the ALJ has done is to substitute his opinion for that of the treating and reviewing doctors. This

is reversible error. A psychiatrist is the expert on mental illness, not an administrative law judge. *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir.1995). It is the law in the Eighth Circuit that an ALJ may not substitute his judgment for that of the physicians. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir.1990)

■ At the administrative hearing held May 9, 1995, the ALJ asked the vocational expert two hypothetical questions. The ALJ relied on the response to the first hypothetical to find that Plaintiff is not disabled. The ALJ, however, asked a second question:

My next hypothetical would be an individual of the same age, sex, education, past relevant work and impairments as previously specified, and this would be an individual who would have the residual functional capacity to perform work related activities as follows; she does not appear significantly limited in her ability to remember occasions (sic) and work like procedures as well as understand, remember and carry out very short and simple instructions; however, she would be moderately limited in her ability to maintain attention and concentrations for extended periods; maintain regular attendance and work in coordination with or in proximity to others without being ... Maintain regular attendance and work in coordination.... With or in proximity to others without being distracted by them.... Does not appear significantly limited in her ability to make simple work related decisions or sustain an ordinary routine without special supervision but would be moderately to markedly limited in her ability to complete the normal work day or work week without interruptions from psychologically based symptoms.... She does not appear significantly limited in her ability to ask simple questions or request assistance but would probably be moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisor (sic) as well as get along with co-workers or peers without distracting them or exhibiting behavioral extremes. She would be moderately limited in her ability to respond appropriately to changes in the work setting but seems able to be aware of normal hazards and take appropriate precautions. She may be mildly to moderately limited in her ability to set realistic goals or to make plans independently of others.

(Tr. PP. 155–156) In response, the vocational expert testified that such a person would not be capable of competitive work. (Tr. P. 156) The limitations in this hypothetical are based on the reports of Dr. Chang, as well as the Mental Residual Functional Capacity Assessment form completed by the psychologist at Disability Determination Services. The opinions of the two doctors, are uncontradicted anywhere in the record. It is well settled law that hypothetical questions must relate *with precision* the physical and mental limitations of the claimant. *Ness v. Sullivan*, 904 F.2d at 435.

### DECISION

Plaintiff met her burden of proving that she can not return to her past relevant work. The medical evidence in the record, from treating and examining sources, supports a finding that Plaintiff is moderately to markedly limited in her ability to work consistently because of her severe impairments. The vocational expert testified that this limitation, alone, would preclude unskilled employment. Tr. PP. 156–157. In light of the uncontradicted testimony from the claimant's treating physician, the consulting psychologist, and the vocational expert, the Court holds that a remand to take additional evidence would serve no useful purpose other than to delay the receipt of benefits to which Plaintiff is entitled. Therefore, the Court shall reverse and award benefits outright. *Wigg v. Chater*, 904 F.Supp. 949, 964 (N.D.Iowa 1995).

Defendant's motion to affirm the Commissioner is denied. This case is remanded to the Secretary for computation and payment of benefits.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993)